**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JAMES T. HETCHLER, SR., et al | ) | |
| | ) | |
| v. | ) | 3-08-CV-551-B |
| | ) | |
| ROCKWALL COUNTY, TEXAS | ) | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's order filed on February 6, 2009, and the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), came on to be considered Defendant Rockwall County, Texas's Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Rule 56 Motion for Summary Judgment filed on December 2, 2008, together wit Plaintiffs' response thereto and Defendant's reply, and the parties' appendices and the magistrate judge finds and recommends as follows:

**Statement of the Case**: Officers of the Rockwall County Sheriff's Office took custody of James T. Hetchler, II (hereinafter referred to as "Hetchler"), from the Ellis County Sheriff's office on April 11, 2007, and transported him to the Rockwall County Jail. While confined at the Rockwall County Jail on April 26, 2007, Hetchler committed suicide by hanging himself in his cell with a bed sheet.

The Plaintiffs in this case - Hetchler's father, mother and the mothers of his children as next friends of the minors - brought suit against Rockwall County in a Texas state court under the Texas Tort Claims Act (the "TTCA"). Subsequently they amended their state petition to include federal claims after which Rockwall County removed the case to this court.

**Standard to be Applied**: Since Rockwall County relies on materials outside the pleadings in support of its case dispositive motion, the motion must be treated as one for summary judgment under Rule 56. *See* Rule 12(b).

A party may be entitled to summary judgment if the record shows that there is no genuine issue of material fact and that "the moving party is entitled to judgment as a matter of law." Rule 56(c). A party who moves for summary judgment has the burden to identify the parts of the pleadings, affidavits and records which show the absence of a genuine issue of material fact. *See Celotext Corp., v. Catreet,* 477 U.S. 317, 325, 106 S.Ct. 2540 (1986). If the movant carries this burden, then the burden shifts to the nonmovant to show that the court should not grant summary judgment. *Id.* at 324-325. Rather than rest on pleadings the nonmovant must come forth with specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505 (1986). A genuine issue of fact requires the existence of an alleged disputed factual matter on which "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 477 U.S. 248. All facts and inferences to be drawn are reviewed in the light most favorable to the nonmovant.

**Analysis:** Plaintiffs' federal claims are predicated on their argument that Rockwall County violated James T. Hetchler, II's, constitutional rights protected under the Fourth, Eighth and Fourteenth Amendments. However, since it is undisputed that Hetchler was a pretrial detainee at the time of his death, Plaintiffs cannot proceed pursuant to the Fourth and Eighth Amendments. *See e.g. Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996) (*en banc*) explaining why the Eighth Amendment does not apply to a pretrial detainee. On the other hand, while the claims of a pretrial detainee arise under the Due Process Clause of the Fourteenth Amendment, there is no significant distinction concerning basis human needs between persons detained prior to conviction and those who are incarcerated pursuant to a conviction. *See Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).

In addressing the rights afforded under the Fourteenth Amendment, the court must first

2

determine whether Hetchler's suicide occurred as a result of conditions of confinement at the jail or constituted an episodic event. A "conditions of confinement" case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare, supra,* at 644. If the complained of harm is a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *Id.* at 645.

In support of their argument that Hetchler's death was the result of conditions of confinement Plaintiffs argue that placing him in a location which was not observable <u>at all times</u> and failing to issue him a suicide smock rather than standard inmate clothing and sheets constituted unconstitutional conditions of confinement.

In further describing circumstances which give rise to a "conditions of confinement" claim, the court in *Hare* stated:

> In true jail condition cases, an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction. A State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction. Likewise, even where a state may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices. *Id.* at 644.

Rockwall County argues that Hetchler's suicide is to be classified as an "episodic act or omission" case. In such a case an actor usually is interposed between the detainee and the governmental entity and whose conduct involves an act or omission which derives from a policy of the governmental entity which permitted or caused the act or omission. *See e.g. Scott v. Moore,* 114 F.3d 51, 53 (1997) citing *Hare v. City of Corinth, supra.*

The undisputed facts disclosed by the summary judgment record present the following scenario:

3

On April 11, 2007, in pre-confinement screening Hetchler reported that he had attempted suicide within the previous two week period. *See* Defendant's Appendix at 4-7. He was placed on a 15 minute watch and North Star Mobile Crisis was contacted to make an independent evaluation. The evaluation was conducted later that day in which the evaluator reported that he was at low risk to commit suicide or to injure himself. *Id.* at 17-20.

From April 11 through April 18, 2007, Hetchler was taking his medications as prescribed and his confinement was without incident. *Id.* at 34-48. On the same date his mother was told by his girlfriend that Hetchler acted strangely and talked irrationally while taking one of his prescription medications. Deposition of Patricia Hetchler, Defendant's Appendix at 102-103. However, there is no competent evidence to show that this information was conveyed to Defendant's jail employees.

Later on the evening of April 18th, Nurse Christy George requested a second evaluation by North Star Mobile Crisis which was conducted between 11 and 11:50 p.m. Defendant's Appendix at 21-24. Hetchler was upset that he was not going to be removed to a hospital. The evaluator rated him at a moderate risk to himself and recommended that he remain on a 15 minute watch until he was seen by a doctor.

From April 19th until April 24, 2007, Hetchler refused to take his psychiatric medicines. Defendant's Appendix at 49-60. On April 24th he was seen by a county jail doctor who removed some impacted paper in his ear and changed his prescription from Topamax to Depakote, after which Hetchler again began to take his prescribed medications.

On April 25, 2007, Hetchler's parents visited him in the Rockwall County Jail. Both of them believed that he appeared more despondent and depressed, but neither voiced any concern to jail employees. Deposition of Patricia Hetchler, Defendant's Appendix at 107-110; Deposition of James

4

T. Hetchler, Sr., Defendant's Appendix at 115, 117.

Rockwall County Jail records reflect that during the evening of April 26, 2007, beginning at 2:05 p.m. (14:05) periodic observations of Hetchler's behavior were noted. *See* Plaintiff's Appendix at J-17 and J-18. At 5:30 p.m. (17:30) Officer Jesse Saxon found him in his cell hanging from a bed sheet tied to the shower head. Defendant's Appendix at 9 and 13. During the evening period the lapses between observations ranged from 8 minutes to 38 minutes. Thirty two minutes elapsed from the observation which preceded the time at which Hetchler was found hanging in his cell. When emergency responders removed him from the jail, he was still alive, but he died on April 27, 2007, at 11:30 a.m. Defendant's Appendix at 10.

Plaintiffs' argument that Hetchler's death constitutes a conditions of confinement case is clearly without merit. The stated policy of Rockwall County with respect to the detention center was to place low risk inmates on a 15 minute suicide/medical watch. Defendant's Appendix at 64. ¶ 2.a. As noted above, the initial independent evaluation conducted in accordance with the written policy rated Hetchler at a low risk. Although the second evaluation gave a moderate risk level, the express recommendation was to continue him on a 15 minute watch.[1] The Plaintiffs have cited no case which holds that a failure to maintain constant visual surveillance of a pretrial detainee determined to be a low to moderate suicide risk violates federal constitutional standards. Similarly, the fact that Hetchler was permitted to wear regular inmate clothing rather than being furnished with a suicide smock has not been held under similar circumstances to violate constitutional standards. Under remarkably similar circumstances to those contained in the summary judgment record, the Fifth

---

[1]As noted in Defendant's brief at n. 2, the 15 minute watch period exceeds the State regulations for suicidal and other high risk detainees. *See* Tex.Admin.Code, Title 37, Part 9, Rule § 275.1.

Circuit has held that the "episodic acts or omissions" standard applied in a jail suicide. *See Flores v. County of Hardeman, Texas*, 124 F.3d 736, 738 (5th Cir. 1997). The reported cases of the Fifth Circuit uniformly hold that inmate suicides involve "episodic acts or omissions" claims. Plaintiffs have cited no cases which have applied the "conditions of confinement" criteria to cases in which a prisoner has committed suicide.

To establish liability against Rockwall County Plaintiffs must demonstrate that jail employees "acted with subjective deliberate indifference" and that their actions resulted from a county "policy or custom adopted or maintained with objective deliberate indifference to [Hetchler's] constitutional rights." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *see also Hare*, 74 F.3d at 649 n. 4. Plaintiffs must prove that the episodic acts or omissions of Defendant (or its employees) were done with "deliberate indifference" to a substantial risk of serious harm to Hetchler. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Deliberate indifference "cannot be inferred from a negligent or even grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Plaintiffs must prove that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur. *Id*. (citing *Hare*, 74 F.3d at 643). To establish the County's liability for its employee's violation, Plaintiffs must show that the "employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to Hetchler's constitutional rights." *Flores*, 114 F.3d at 54 (citing *Hare*, 74 F.3d at 649).

Plaintiffs cannot satisfy this substantial burden, i.e. to marshall sufficient summary judgment

6

evidence from which a reasonable jury could find that one or more jail employees were aware of facts from which an inference of substantial risk of harm could be drawn, that such an inference was actually drawn, and that the response to Hetchler's hanging indicates the presence of a subjective intent that harm occur. To the contrary, the evidence shows that Hetchler was twice evaluated by a third party which rated him a low suicide risk on the first occasion and a moderate risk on the second. The jail personnel implemented the 15 minute surveillance as recommended. Although the jail records disclose that this regimen was not always followed to the letter, the greater time lapses constitute at most negligence.[2] When Hetchler was discovered hanging in his cell, jail personnel promptly undertook measures to preserve his life.

Rockwall County is also entitled to summary judgment on Plaintiffs' § 1983 claim that the county failed to adequately train its jail employees. This theory of recovery requires proof that the persons responsible for the inmate's care were not trained to recognize an imminent threat by an inmate to commit suicide, that a causal connection exists between the lack of training and Hetchler's suicide and that the failure to train constituted deliberate indifference to his constitutional rights. *See e.g. Thompson v. Upshur County, Texas,* 245 F.3d 447, 459 (5th Cir. 2001) (collecting cases). Moreover, proof of more than a single instance of a lack of training causing a violation of constitutional rights is normally required before such a lack of training constitutes deliberate indifference. *Id.* citing *Synder v. Trepagnier,* 142 F.3d 791, 798-99 (5th Cir. 1998).

---

[2]In hindsight it is unfortunate that Hetchler was provided with a standard bed sheet and regular jail clothes. However, the protocol used was consistent with that followed in low suicide risk cases. Given the recommendation of North Care Mobile Crisis, the information and observations with respect to his behavior and the fact that two of the plaintiffs, Hetchler's parents, did not report that he appeared to be more despondent to jail personnel, as a matter of law no deliberate indifference to a substantial risk of serious harm is shown.

As related by Captain Robert Guzik in the 7½ years he has been employed by the County there were no suicides prior to Hetchler's. Deposition of Guzik, Defendant's Appendix at 73. Although Plaintiffs argue that the county failed to train jail employees, they present no evidence of the specifics of what training should have been given. *See Pineda v. City of Houston,* 291 F.3d 325, at 333 (5th Cir. 2002) (noting the absence of any evidence regarding the additional training which should have been given) cert. denied 537 U.S. 1110, 123 S.Ct. 892 (2003). Plaintiffs ignore completely the fact that Hetchler was seen twice by independent professionals to assess his suicide risk, thus precluding a finding of deliberate indifference.

**Plaintiffs' Texas Tort Claims Act claim.** Plaintiffs seek to recover damages under the TTCA, claiming that governmental immunity was waived when Hetchler was provided with tangible property including a bed sheet which he used to hang himself. They allege that the sheet was lacking integral safety components and that the jail employees misused the bed sheet when they provided it to Hetchler.

In light of the fact that Defendant is entitled to summary judgment on Plaintiffs' federal claims for the reasons set out above the District Court has broad discretion in deciding whether to dismiss Plaintiffs' supplemental state law claim without prejudice or to retain jurisdiction and decide the TTCA claim on the merits. *See e.g. Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994); *Flores v. County of Hardeman, Texas, supra,* 124 F.3d at 739; *Bass v. Parkwood Hospital,* 180 F.3d 234, 246 (5th Cir. 1999); and *Thompson v. Upshur County, supra,* 245 F.3d at 464.

Under the circumstances presented - given the discovery which has already been taken in this case and the precedents, both state and federal, applying the provisions of the TTCA - it is the recommendation of the magistrate judge that Defendant's motion for summary judgment as it relates

to this state law claim be decided on the merits.

Had Hetchler been given a suicide smock after having been evaluated at a high risk of suicidal behavior and had the smock been torn into strips with which a hanging instrument was fashioned, a finding that the tangible property was defective would be reasonable since the very characteristic of a suicide smock that it could not be torn would have been lacking. However, the facts in this case do not comport with this hypothetical scenario. Because Hetchler was <u>never</u> given a "high risk" rating he was provided with a bed sheet and standard inmate clothing. While the instruments used by inmates in committing suicide were different the holdings in the cases refusing to find liability under the TTCA apply equally to Plaintiffs' claim in this case ³

**<u>RECOMMENDATION</u>**:

For the foregoing reasons it is recommended that Defendant Rockwall County's December 2, 2008, motion be granted and that the District Court enters its judgment dismissing all claims asserted by Plaintiffs in this action with prejudice, and

In the alternative it is recommended that all federal claims asserted in this action be dismissed with prejudice and that Plaintiffs' supplemental state law claims pursuant to the Texas Tort Claims

---

³*San Antonio State Hospital v. Cowan,* 128 S.W.3d 244 (Tex. 2004) (no liability under TTCA where patient committed suicide with walker and suspenders which hospital employees permitted him to keep); *Forgan v. Howard County, Tex.,* 494 F.3d 518, 520-21 (5th Cir. 2007) (inmate's use of jail-issued trousers to commit suicide not actionable under TTCA); and *Anderson v. Dallas County, Texas,* 286 Fed.Appx.850, 863-864, 2008 WL 2645657 (5th Cir. 2008) (inmate's use of jail issued jumper and plastic spoon to commit suicide not actionable under TTCA).

Act be dismissed without prejudice.

A copy of this recommendation shall be transmitted to counsel for the parties.

SIGNED this 18th day of March, 2009.

                                              */s/ Wm. F. Sanderson, Jr.*
                                              WM. F. SANDERSON, JR.
                                              UNITED STATES MAGISTRATE JUDGE

**NOTICE**

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (<u>en banc</u>), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a <u>de novo</u> determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.